*246 OPINION OF THE COURT
David Stadtmauer, J.
May a prospective juror be peremptorily challenged because of "bad English?”
The defendant is a Hispanic male who stands accused of the crime of murder in the second degree. During the course of jury selection, defense counsel peremptorily challenged six white non-Hispanic venirepersons. Defense counsel now seeks to exercise a similar challenge against a white female prospective juror who has exhibited no obvious deficiencies as to fairness or other inability to serve. The People move to compel the defense to set forth a racially neutral reason for this challenge.
Unless it is itself challenged, as in the instant case, a peremptory challenge requires no explanation. Thus, it may be exercised arbitrarily. It may not, however, be predicated upon racial discrimination, either by the prosecution (Batson v Kentucky, 476 US 79; Powers v Ohio, 499 US 400; People v Hernandez, 75 NY2d 350) or by the defense (People v Kern, 75 NY2d 638, cert denied 498 US 824). This principle of nondiscriminatory exclusion was also extended to peremptory challenges based upon gender (J.E.B. v Alabama ex rel. T.B., 511 US —, 114 S Ct 1419; People v Allen, 199 AD2d 781; People v Irizarry, 165 AD2d 715; People v Blunt, 162 AD2d 86).
While the proponent of a discriminatory challenge may view it merely in the context of vigorous advocacy, potentially harmful only to the opposition, the harm caused by impermissible discrimination in jury selection extends far beyond those borders. As noted by Justice Blackmun in J.E.B (supra, 511 US, at —, 114 S Ct, at 1427), such discrimination, "whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process.”
Thus, once a party demonstrates to the court that the opposition is using a discriminatory pattern in excluding jurors, the party seeking to exclude the juror must provide a nonracial or gender-neutral reason for doing so. The focus then turns to whether the reason given was sincere and founded upon some rational basis or merely pretextual. If the court determines the explanation to be insufficient or pretextual, then the peremptory challenge must be denied (People v Hernandez, 75 NY2d, at 355-358, supra).
In the case at bar, the prospective juror in question is a *247 white female United States citizen of East European background — possibly Czech or Polish, to judge by her name — who spoke with a moderate accent. Preliminary inquiries by the court and counsel revealed that she was employed as a project coordinator for a housing development program and that, in her spare time, she enjoyed reading, theater, hiking and skiing. She appeared to be highly intelligent, educated and articulate. Under such circumstances, the court could conceive of no logical reason for this peremptory challenge other than that defense counsel wished to exclude yet another white non-Hispanic person from the jury. In considering the previous peremptory challenges by the defense, as well as those jurors against whom peremptory challenges were not made, the court concluded that a pattern of racially based use of peremptory challenges by the defense had been established. Defense counsel was then afforded an opportunity to set forth a racially neutral reason for the challenge.
Defense counsel, in response, claimed that this juror had limited skills in the English language and that she would be hampered in full and free participation in jury deliberations. As stated by counsel, "I want people that can express themselves. Although she can speak the language, I don’t think she can express herself that well. That’s a matter of opinion.”
Had defense counsel not previously challenged six other potential jurors who were Caucasian, this court would, in all likelihood, have permitted this peremptory challenge to stand, without explanation. However, in view of all the previous defense peremptory challenges and also considering that the instant issue had not been raised as a challenge for cause (where it should have naturally arisen), and the fact that the prospective juror, in voir dire, was articulate and clearly understandable to the court, it became apparent that further inquiry was in order. The prospective juror was then called into chambers, where the following colloquy took place (in the presence of the court and all concerned parties):
"the court: Madam, we’ve asked you to step in because counsel wished to ask you a few more questions. I hope you don’t mind.
"prospective juror: No, I don’t.
"the court: Please proceed.
"counsel: Miss * * *
"prospective juror: [states last name].
"counsel: I’m sorry.
*248 "prospective juror: It’s okay. I’m used to it.
"counsel: You had prior jury service before or you had not? "prospective juror: No.
"counsel: Have you ever served on a jury before? "prospective juror: No.
"counsel: There will come a time, after all the evidence is heard in this case, when you’ll be called upon to go into a jury room and it’s going to be expected of you to converse and to be able to articulate and argue your point of view with the other jurors and they with you. Okay?
"prospective juror: Yes.
"counsel: All right. I can’t answer the question for you. Only you really know the situation. I hope you don’t take this in an oifensive way. But we want to make sure. If you go into the jury room, do you feel as though there wouldn’t be any language problem whatsoever?
"prospective juror: No.
"counsel: In hearing what they say?
"prospective juror: No.
"counsel: Would there be any problem with you expressing yourself to them?
"prospective juror: No. No problem.
"counsel: Do you ever run into any occasion during your everyday life * * * where sometimes people have a problem? Either you have a problem making yourself known or they have a problem understanding?
"prospective juror: No. Never.
"counsel: Okay. Thank you.
"the court: Thank you.”
Without question, the prospective juror was able to understand and communicate. Her accent was moderate — East European, with overtones of British pronunciation — and, in this court’s judgment, would in no way interfere with her ability to deliberate. In this respect, it may be noted that accents vary widely and considerably. Some are so heavy as to make the speaker incapable of being understood; others are pleasantly subtle and serve to enhance communication skills. Comprehension of accented English is, understandably, highly subjective. Thus, the court cannot be wholly oblivious to who the other jurors are and whether they are likely to find another potential juror incomprehensible. Yet, in the absence *249 of any requirement of a "comprehensibility hearing,” where jurors are to be called to testify at the voir dire stage whether they can understand one another or whether there is some other linguistic obstacle to comprehension, the ultimate determination of one juror’s alleged incompatibility with another must rest within the subjective discretion of the trial court.
Accordingly, the court finds that the prospective juror in this case is qualified to serve and that the racially neutral explanation advanced by defense counsel is insufficient and unsupported by a readily apparent basis in reason. The peremptory challenge is denied and the court directs that this juror be empanelled and sworn.